UNITED STATES of America, Appellee,

v.

Raymond Leon CURRIER,
Defendant, Appellant.

UNITED STATES of America,
Appellant,

v.

Raymond Leon CURRIER,
Defendant, Appellee.

Nos. 86-1908, 86-1909.

United States Court of Appeals,
First Circuit.

Argued April 9, 1987.

Decided June 22, 1987.

Murrough H. O'Brien, Portland, Me., for Raymond Leon Currier.

Paula D. Silsby, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., was on briefs, for U.S.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and MALETZ,* Senior Judge.

MALETZ, Senior Judge.

Raymond Leon Currier appeals from a judgment of conviction, after a jury trial in the District of Maine, finding him guilty of being a felon in unlawful possession of a firearm shipped in interstate commerce. 18 U.S.C. App. § 1202(a)(1) (1982). He seeks reversal of his conviction, contending that the district court improperly admitted evidence and compounded that error by failing to give a requested limiting instruction. The government cross-appeals, challenging the district court's determination, 644 F.Supp. 228 (1986), that Currier was not a "dangerous special offender" for purposes of imposing an enhanced sentence. 18 U.S.C. § 3575 (1982). We affirm the conviction but remand for resentencing.

I.

The government's evidence consisted primarily of the testimony of Anthony Carey, a government informant, and tape recordings of two conversations between Carey and the defendant which occurred on December 7, 1985.

Carey first met the defendant, Currier, in 1977 and saw him once a week until 1978, during which period the defendant had a

---

* Of the United States Court of International Trade, sitting by designation.

gun dealership.[1] On Labor Day weekend, 1985, Carey, who had by then become an undercover informant, next saw the defendant. He testified that the defendant told him at that time that he still had his gun business going and that he was supplementing his income by making minor cocaine deals. He further testified that a short time later the defendant telephoned him and offered to sell him some cocaine. Subsequently, the defendant came to Carey's house, again to try to sell him drugs.[2]

In early December, 1985, Carey arranged with law enforcement officers that he would contact the defendant and represent that he needed a weapon to convince somebody to pay him money he was owed. In furtherance of this arrangement, Carey telephoned the defendant on December 7, 1985 and asked about the availability of a pistol and whether it could be fixed with a silencer. The defendant replied "You can blow him away and throw it away," and added that he had a ".22 here for a hundred bucks." Further in the conversation, the defendant observed how he thought the "hit" should be made. This telephone call was recorded, introduced into evidence, and played for the jury.

At trial, the defendant objected to and sought redaction of the portions of the telephone recording in which he made references to "blowing somebody away" and making a "hit" as being inadmissible "other crimes" evidence under Rule 404(b) and unduly prejudicial under Rule 403. He argued that these statements depicted him as an illegal gun dealer who conspired with his customers to commit murder and that the statements served no prosecutorial purpose since the indictment alleged a simple possessory crime. The district court overruled the objection, finding that those statements by the defendant were relevant to the issue of whether or not the defendant possessed the firearm and that this discussion between Carey and the defendant placed the crime in context.

Several hours after this telephone call, Carey, wearing a body wire, went to the defendant's apartment. There, he had a discussion with the defendant which was recorded and shortly thereafter he exited, having purchased a .357 Smith & Wesson for $150. During this conversation, Carey raised the issue of buying some valium from the defendant. The defendant responded that he had some "five thousand" valiums "right here," to which Carey exclaimed, "No shit. Jesus Christ." The tape of this conversation was introduced into evidence and played for the jury.

The defendant objected to and sought to redact the portion of the tape which pertained to a possible sale of valium on the grounds that it was impermissible evidence of "other crimes" under Rule 404(b) and unfairly prejudicial under Rule 403. The district court overruled the objection on the basis that the challenged portion of the tape was part of the overall conversation and not unfairly prejudicial because of the earlier unobjected-to testimony about possible drug transactions, and because the statements were voluntarily made.

The defendant appeals, contending that the admission of these two tape recordings without the requested redactions constituted reversible error.

## II.

At the outset, we note that our review is limited to determining whether or not the district court abused its discretion in admitting the challenged statements into evidence.[3] Because a district court can more

---

1. In connection with this gun dealership, the defendant was convicted on May 31, 1979 by the United States District Court for the District of Maine of eleven counts of selling firearms to a non-resident of the state (18 U.S.C. § 922(b)(3)) and eleven counts of failing to keep required sales records of firearms sales (18 U.S.C. § 922(m)). He was sentenced to concurrent five year terms for those offenses and was released from incarceration in October, 1983.

2. The defendant interposed no objection to this entire line of testimony.

3. We reject the defendant's claim that the district court failed to conduct any balancing test at all under Rule 403. The court was clearly aware of the rule, and "[i]t's failure to elaborate on the reason for deciding to admit the evidence ... did not in these circumstances imply that it was ignoring the proper factors under Rule

easily assess dangers and probative value associated with proffered evidence, admissibility under Rules 403 and 404(b) is best left to the sound discretion of the trial judge, and we will interpose our judgment only if a complaining party can demonstrate that the district court's ruling did not fall within the ambit of reasonable debate.[4] *United States v. Ranney,* 719 F.2d 1183, 1188 (1st Cir.1983); *United States v. Morris,* 700 F.2d 427, 431 (1st Cir.), *cert. denied,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983); *see generally* 2 D. Louisell & C. Mueller, Federal Evidence § 125 (1978); J. Weinstein & M. Berger, Weinstein's Evidence § 401[01] (1986).

■ Rule 404(b) specifies that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Fed.R.Evid. 404(b). However, "if such evidence is relevant to another, legitimate purpose it may be admitted if its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury." *United States v. Barrett,* 539 F.2d 244, 248 (1st Cir.1976); *United States v. Anzalone,* 783 F.2d 10, 11–12 (1st Cir. 1986). Thus, evidence of prior or contemporaneous uncharged conduct may be admissible to complete the story of a crime by proving the immediate context of events near in time and place. *United States v. D'Alora,* 585 F.2d 16, 20 (1st Cir.1978). As this court has stated:

'[E]vidence of other criminal acts [is] admissible ... when [it is] so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.'

403." *Dente v. Riddell, Inc.,* 664 F.2d 1, 4 (1st Cir.1981).

**4.** Federal Rule of Evidence 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Green v. United States,* 176 F.2d 541, 543 (1st Cir.1949) (quoting *Bracey v. United States,* 142 F.2d 85, 87 (D.C.Cir.1944)); *accord United States v. Hopkinson,* 492 F.2d 1041, 1043 (1st Cir.1974).

■ Against this background, we conclude that the objected to statements on the telephone tape concerning the use of the gun for "blowing somebody away" were not improperly admitted. While it is true that the statements involved references to violent crimes that could be perpetrated with the gun, they were, in effect, recommendations regarding the use of the gun that the defendant was trying to sell. As such, they were closely intertwined with the charged offense of possession, providing both significant contextual material and proof that the defendant possessed the gun. *Cf. United States v. Eatherton,* 519 F.2d 603, 611 (1st Cir.1975) (evidence admissible which logically tended to associate appellant with crime). Since the statements were thus relevant for purposes other than proving criminal propensity, their admission was not barred by Rule 404(b).

■ We now consider whether the district court erred in determining, under Rule 403, that the probative value of these statements outweighed their prejudicial impact. In this context, we note that the government presented ample other proof that the defendant in fact possessed the gun, notably, the gun itself, which Carey turned over to law enforcement officials immediately after he left the defendant's apartment. Nonetheless, given the integral role these statements played in the negotiations for the sale of the gun, we cannot say that the court abused its discretion in admitting them in evidence. *See United States v. Barrett, supra,* 539 F.2d at 249 (task of

Federal Rule of Evidence 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**56**

balancing is committed primarily to the trial court); *United States v. D'Alora, supra,* 585 F.2d at 21 (balancing test is whether unfair prejudice substantially outweighs probative value).[5]

■ By contrast, we find the statements on the "body" tape concerning valium were erroneously admitted. These statements were, at most, only tangentially probative on the issue of possession,[6] and were not necessary to complete the story of the crime. Certainly, the jury could have understood the gun transaction, which was in no way related to narcotics, without the references to valium.[7] Consequently, even assuming that these statements were to some degree relevant, their prejudicial impact far outweighed their probative value.

We are not persuaded by the government's argument that the statements were not impermissibly prejudicial because Carey had earlier testified to having discussions with the defendant about possible drug transactions. First, the earlier testimony concerned possible purchases of small amounts of cocaine, whereas the tape made reference to valium. Thus, the recorded statements were not merely duplicative of earlier, unobjected-to evidence. Rather, they made the defendant appear to be a large-scale distributor of different types of illegal drugs. Second, there is a considerable difference between the testimony of a paid informant, who arguably had a motive to lie, regarding a putative other crime of a defendant, and the far more prejudicial recorded evidence of the defendant's own words regarding that crime.

Consequently, the probative value of this evidence was substantially outweighed by its unfair prejudice to the defendant, and the trial court erred in not making the requested redaction.

■ Although it was error to admit the statements relating to valium, the error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In determining whether or not error was harmless, a reviewing court must assess the record as a whole to determine the probable impact of the improper evidence upon the jury. *Morgan v. Hall,* 569 F.2d 1161, 1166 (1st Cir.), *cert. denied,* 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1142 (1978); *see Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). The prejudicial effect of the im-

5. The defendant also argues that the district court erred in not giving a limiting instruction regarding the objected-to statements immediately after the recordings were received in evidence. Not only does the record not support defendant's claim that he requested such an instruction, defense counsel specifically indicated at trial that he had no objection to the instruction that *was* given after the recordings were received, which pertained to the proper use of the transcripts. Moreover, the district court instructed the jury in its final charge that it could not consider evidence of other conduct in determining whether or not the defendant was guilty of the crime charged. While we believe the better practice would have been to also give a cautionary instruction at the time the evidence was admitted, the trial court did not commit plain error in failing to give such an instruction.

6. The government cites *United States v. Simon,* 767 F.2d 524 (8th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985), in which evidence of drug transactions was admitted to prove a firearms transaction, to support its argument that the statements concerning valium were properly admitted. However, in *Si-*

*mon,* a key issue was whether the defendant actually possessed the firearms, which were in a desk to which a number of people had access. Evidence that the defendant had been packaging drugs at that desk immediately before the seizure of the firearms was thus highly relevant to the issue of the defendant's possession of those weapons. Here, on the other hand, the defendant did not argue that the gun he was charged with possessing could have belonged to someone else in his apartment. Thus, the evidence that the defendant had valium somewhere in that apartment was at most only marginally relevant on the issue of possession, and such relevance was far outweighed by the prejudicial effect of the evidence. To rule otherwise would be, in effect, to apply a blanket exception for the admission of collateral narcotics evidence in every charged firearms offense, eviscerating the protections afforded by Rule 404(b).

7. The original indictment against Currier contained a second count for unlawful possession of valium. This count was severed by order of the district court, June 10, 1986.

proper conduct must be weighed against the impact of the properly admitted evidence to determine whether or not the evidence complained of might have contributed to the conviction. *United States v. Christian*, 571 F.2d 64, 69–70 (1st Cir. 1978); *United States v. Harrigan*, 586 F.2d 860, 863 (1st Cir.1978). In this case, the properly admitted evidence of the defendant's guilt was overwhelming. Carey's trial testimony about purchasing a gun from the defendant was in all relevant respects corroborated by the properly admitted portions of the tapes. It was also corroborated by testimony of two police officers that they had dropped Carey off at the defendant's apartment, having searched him and found no weapons, and that they had then searched him immediately after his leaving the apartment and found the gun which he had purchased from the defendant.

### III.

Prior to the defendant's trial, the government served notice on the district court that he was a "dangerous special offender," within the meaning of section 3575(b) of Title 18, United States Code, and, therefore, subject to the imposition of an enhanced sentence. *See* 18 U.S.C. § 3575 (1982).[8] After the defendant's conviction, the district court held a hearing and, subsequently, filed an opinion and order, holding that the government had failed to establish by a preponderance of the evidence that the defendant qualified as a dangerous special offender. *United States v. Currier*, 644 F.Supp. 228 (D.Maine 1986). Thereafter, the defendant was sentenced to a period of imprisonment of two years, the maximum allowed under the sentencing provision of the charged offense. 18 U.S.C. § 1202(a). The government appeals this determination.

The dangerous special offender provisions, 18 U.S.C. §§ 3575–76, were enacted as part of the Organized Crime Control Act of 1970 and permit enhanced sentences for those who come within the statute's terms. In order to be classified as a dangerous special offender under section 3575, a defendant must have been previously convicted of two or more offenses subject to various conditions. For purposes of this appeal, the relevant conditions are (1) that the defendant must have been previously "convicted" of two offenses and (2) that each of these offenses was "punishable by imprisonment in excess of one year." 18 U.S.C. § 3575(e)(1)[9]; *United States v. Adams*, 771 F.2d 783, 786 (3rd Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985).

It is undisputed that at the time of his conviction in this case the defendant had one prior conviction satisfying the requirements of section 3575.[10] The question on

---

**8.** The Dangerous Special Offender provisions have been repealed effective November 1, 1987. Pub.L. 98–473, title II, §§ 212(a)(1), (2), 235(a)(1), 98 Stat. 1987, 2031 (1984).

**9.** The full text of 18 U.S.C. § 3575(e)(1) (1982) reads:

> A defendant is a special offender for purposes of this section if—
> (1) the defendant has previously been convicted in courts of the United States, a State, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof for two or more offenses committed on occasions different from one another and from such felony and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of such felony, and less than

five years have elapsed between the commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year under applicable laws of the United States, a State, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, any political subdivision, or any department, agency or instrumentality thereof.

> Dangerousness is described in 18 U.S.C. § 3575(f) (1982):

> A defendant is dangerous for purposes of [§ 3575] if a period of confinement longer than that provided for such felony is required for the protection of the public from further conduct by the defendant.

**10.** See note 1, *supra*.

this appeal is whether one or both of two other convictions, one in California state court and one in Maine state court, also fall within the language of section 3575, with the result that the defendant had two or more prior convictions.[11] We find that both of the convictions satisfy the requirements of section 3575.

### 1. *The California Conviction*

The defendant was convicted in 1970 in a California state court "of the crime of Forgery, in violation of section 470, Penal Code of California, a felony...." He had pleaded guilty to the charge and received "one year summary probation on condition he serves 6 months in County Jail suspended and on condition he is accepted in Armed Services by September 23, 1970. Defendant released forthwith." *See United States v. Currier, supra*, 644 F.Supp. at 233.

The statute under which the defendant was convicted, section 473 of Title 13 of the California Statutes, specifies a punishment for the offense of forgery of "imprisonment in the State prison for not less than one year nor more than fourteen years, *or by imprisonment in the county jail for not more than one year*." Cal. Penal Code § 473 (West 1970) (emphasis added); *Currier, supra*, 644 F.Supp. at 231. Under California law:

> (b) When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances:
>
> (1) After a judgment imposing a punishment other than imprisonment in the state prison. Cal.Penal Code § 17(b) (West 1970).

The district court here determined that the 1970 California conviction could not serve as a section 3575 predicate offense on the ground that in California a crime is classified as a felony or misdemeanor depending on the sentence actually imposed. *Currier, supra*, 644 F.Supp. at 231–32.

The court concluded that the defendant's sentence of only six months in jail had transformed his forgery conviction into a misdemeanor, and so into an offense not punishable by imprisonment in excess of one year, within the meaning of section 3575. *Id.*

■ If the language of a statute is unambiguous, it is ordinarily conclusive, absent clear contrary legislative intent. *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983); *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). An examination of the language of section 3575 convinces us that the California conviction is, in fact, a valid predicate offense. The clear language of that section provides that a criminal offense is a predicate if it was "*punishable* in such [state] courts by ... imprisonment in excess of one year." 18 U.S.C. § 3575 (emphasis added). It is undisputed that, as punishment for the defendant's prior California conviction, the state court had discretion to impose imprisonment of up to fourteen years, far in excess of the one year requirement. As the Supreme Court has stated in a similar context, "[i]t was plainly irrelevant to Congress whether the individual in question actually receives a prison term; the statute imposes disabilities on one convicted of 'a crime *punishable* by imprisonment for a term exceeding one year.'" *Dickerson, supra*, 460 U.S. at 113, 103 S.Ct. at 992 (emphasis in original) (citation omitted) (firearms disabilities imposed by Gun Control Act violation not removed by expunction of defendant's predicate state conviction); *see United States v. Bustamante*, 706 F.2d 13, 14 (1st Cir.), *cert. denied*, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983). Therefore, the California conviction satisfied the requirement of section 3575. *Cf. United States v. Pruner*, 606 F.2d 871, 873 (9th Cir.1979) (defendant had been convicted of crime "punishable by ... term exceeding one year" although sentence to county jail made crime misdemeanor under state law);

---

**11.** The government does not appeal the district court's determination that a third conviction by

a Louisiana state court in 1971 did not satisfy the provisions of section 3575.

*United States v. Place,* 561 F.2d 213, 215 (10th Cir.) (that defendant was sentenced to only one year was irrelevant to question of whether court "could have" imposed longer sentence), *cert. denied,* 434 U.S. 1000, 98 S.Ct. 643, 54 L.Ed.2d 496 (1977). Contrary to the district court's conclusion, the manner in which the offense is classified, after the fact, under state law, "cannot control our interpretation and application of the federal statute." *Place, supra,* 561 F.2d at 215; *see United States v. Woods,* 696 F.2d 566, 568 (8th Cir.1982) (federal law determines whether person is convicted felon for purpose of firearms statutes; state law interpretation is not binding on the federal courts); *United States v. Glasgow,* 478 F.2d 850, 852 (8th Cir.) (where prior crime punishable by more than two years imprisonment, defendant had been convicted of felony regardless of sentence actually imposed or of how conviction was classified under state law), *cert. denied,* 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973).

### 2. *The Maine Convictions*

In 1986, the defendant was convicted in Maine state court for two felony offenses of trafficking in a schedule Z drug and theft of property by receiving. At the time of the "dangerous special offender" hearing, these convictions were on appeal to the Maine Law Court.[12]

It is not disputed that the 1986 Maine convictions for drug trafficking and theft were punishable by imprisonment in excess of one year. Nevertheless, the district court held that it could not consider the Maine convictions because they were on appeal and so, at the time of the hearing, subject to vacation or reversal. *Currier, supra,* 644 F.Supp. at 233. In so ruling, the court relied upon the language of section 3575(e) providing that "[a] conviction shown on direct or collateral review or at the hearing to be invalid shall be disregard-

ed" for purposes of determining whether or not a defendant qualifies as a "special offender." 18 U.S.C. § 3575(e).

As this court stated in *United States v. Samson,* 533 F.2d 721, 722 (1st Cir.), *cert. denied,* 429 U.S. 845, 97 S.Ct. 126, 50 L.Ed.2d 116 (1976), the term "conviction" means " 'convicted by a court' even though the conviction may sometime be reversed." [13] *See Lewis v. United States,* 445 U.S. 55, 60–61, 100 S.Ct. 915, 918–19, 63 L.Ed.2d 198 (1980); *United States v. Wooten,* 503 F.2d 65 (4th Cir.1974); *United States v. Liles,* 432 F.2d 18 (9th Cir.1970); *United States v. Torres,* 616 F.Supp. 499, 500–501 (D.P.R.1985) (a conviction on appeal is nonetheless a predicate offense under federal firearms statutes).

We find nothing in the language of the statute or its legislative history to suggest that the word "conviction" in section 3575(e) should be understood to have a meaning other than its normal meaning. The statutory language unambiguously precludes consideration only of convictions that have been "shown" to be invalid, using the past tense. A conviction undergoing appeal has not yet been "shown" to be invalid, and so does not fall within this statutory exception. Nor does the legislative history indicate to the contrary. It is true that the Senate Report accompanying the Senate draft of proposed section 3575(e) commented that "judgments on which direct appeals are pending" should not be considered. S.Rep. No. 617, 91st Cong. 1st Sess. 164, *reprinted in* 12834–5 Senate Misc. Reports on Public Bills V. However, it was the House version of section 3575, not the Senate version, which Congress enacted. The House Report accompanying its bill did not contain the Senate Report's statement that "judgments on which direct appeals are pending" should

12. This appeal has been decided. According to counsel for the defendant, the narcotics conviction was affirmed and the theft conviction was reversed.

13. In *Samson,* the defendant was tried and convicted of receiving firearms in commerce after having been convicted of a felony. At the time

of the offense, Samson's predicate felony conviction in Maine state court was on appeal. Although it was possible that the underlying felony would be vacated or reversed on appeal, this court held that "convicted by a court" should be given its "normal meaning." 533 F.2d at 722.

be disregarded.[14] *See* H.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Adm.News at 4038; *United States v. Adams, supra,* 771 F.2d at 788. We therefore do not find the language in the Senate Report determinative. Indeed, the fact that the House Report, issued subsequently to the Senate Report, did not include the Senate Report's statement regarding appeals suggests that, if anything, Congress's specific intent was that convictions on appeal *not* be excluded from consideration. Given this, we conclude that the normal meaning of "conviction" should be applied in the context of section 3575. Consequently, the district court erred in not crediting the 1986 Maine convictions as a proper predicate within the meaning of section 3575.[15]

## IV.

The conviction of Raymond Leon Currier is affirmed. The order of the district court that he was not demonstrated to be a special offender is vacated and the case is remanded for resentencing consistent with this opinion.

**14.** The language originally proposed by the Senate for section 3575(e) read that "a conviction shown to be invalid ... shall be disregarded." The House inserted language into the Senate version so that the final version of section 3575 reads "... a conviction shown on direct or collateral review or at the hearing to be invalid ... shall be disregarded." Thus, the language of the House and Senate bills was not significantly different, although, as noted, the House and Senate *reports* differ significantly, in that the House report omits any statement indicating that convictions on appeal should be disregarded.

**15.** The defendant argues that the trial court's findings should not be disturbed because they were not clearly erroneous. We are mindful that under the dangerous special offender stat-

ute, the sentencing court retains the same broad discretion as in the usual sentencing procedure. *United States v. Inendino,* 604 F.2d 458, 464 (7th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979); *United States v. Williamson,* 567 F.2d 610, 615 (4th Cir.1977). Nevertheless, this discretion inures to the trial court subsequent to the provisions of the sentencing statute being applied correctly. When an individual has been properly qualified as a dangerous special offender, the trial court *may,* but is not obliged to, enhance the defendant's imprisonment "for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony." 18 U.S.C. § 3575(b).