**UNITED STATES of America, Plaintiff,**

v.

**Dan Dean LASHMETT, Defendant.**

**No. 89–30093.**

United States District Court,
C.D. Illinois,
Springfield Division.

July 11, 1990.

Patrick W. Kelley, Asst. U.S. Atty., Springfield, for plaintiff.

James A. Ackerman, Springfield, for defendant.

## OPINION

RICHARD MILLS, District Judge:

Defendant was charged with six counts of mail fraud for his part in a scheme to defraud an insurance company.

Following a two-day trial, the jury in this case returned a verdict of guilty on all six counts.

We now consider Defendant's post-trial motion.

The lion's share of the motion can be disposed of with little discussion. Defendant variously complains of a couple of evidentiary rulings, that he was not proven guilty beyond a reasonable doubt, that he was somehow denied due process of law, and that he was not proven to have been a member of any conspiracy. He does not elaborate on these complaints, nor does he cite any law to support his position. We reaffirm our previous rulings.

■ Defendant's post-trial motion does, however, raise again an issue which this Court visited prior to trial. It is a unique issue and, therefore, warrants our further attention.

Briefly, the issue revolves around Defendant's place of residence during the time frame involved in the conspiracy. Defendant was the mastermind in this conspiracy involving three persons (including himself), but he controlled the activities of the other two co-conspirators while he was incarcerated in the state prison system for a state court conviction unrelated to the offense here. Prior to trial, the Government sought and received an advance ruling on the admissibility of evidence that Defendant was incarcerated during that time period. We allowed the evidence in, over Defendant's objection, and he renews that objection now.

The Government's stated reason for wanting to introduce this evidence was that the only way to show Defendant's motive for entering into a conspiracy, rather than perpetrating the fraud scheme solely on his own, required informing the jury that Defendant was incarcerated during the time period, and so was unable to carry out the scheme on his own. Moreover, the Government alluded to the necessity of revealing the incarceration to explain the context of this conspiracy; the Government contended that the jury would likely doubt the plausibility of its case if there was no evidence explaining why Defendant was not more directly involved in the mail fraud scheme.

For his part, Defendant does not object to evidence that he telephoned his co-conspirators or otherwise controlled their actions, but he does object that informing the jury of his whereabouts when he made those telephone calls was unnecessary. Defendant complains—and the Government agrees—that revealing the fact that Defendant was incarcerated during the time the conspiracy was carried out had the unavoidable consequence of informing the jury that he had been convicted of some crime in the past. (The Government never had any intention of informing the jury of the crime for which Defendant was then incarcerated, and in fact that information never came out during the course of trial.)

Defendant complains that informing the jury of his whereabouts was prejudicial, and that that prejudice outweighed the probative value of the information.

We allowed the evidence in. As it turned out, the Government's witness Jeff Lashmett (one of the co-conspirators) mentioned briefly, and in passing, that Defendant had orchestrated the scheme from his prison residence. At the time the evidence came out, Defendant did not request, nor did the Court give, any cautionary instruction concerning the testimony—this was probably for the best, because such an instruction may have merely called greater attention to what turned out to be an extremely downplayed point. At the close of the case, though, the jurors were read and given an instruction that the evidence could be put only to a limited use. That instruction was tendered by the Government; the Defendant did not object to the instruction, nor did he tender a version of his own.

This issue implicates Fed.R.Evid. 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to show the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Also involved is Fed.R.Evid. 403, which provides that otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." We have previously ruled that this evidence meets the tests of both these rules of evidence, and we now reaffirm that ruling, especially in light of what actually happened during trial.

Caselaw on this precise point is sparse. Of course, Rule 404(b) itself would allow evidence of prior crimes (even inferential evidence of those crimes, as is the case here) to explain a defendant's motive for committing the crime. *See also United States v. Hattaway,* 740 F.2d 1419 (7th Cir.), *cert. denied,* 469 U.S. 1028, 105 S.Ct. 448, 83 L.Ed.2d 373 (1984). Here, as in *Hattaway,* "excluding this evidence would [leave] a 'chronological and conceptual void' " in the Government's case. 740 F.2d at 1425. Inasmuch as this evidence showed Defendant's motive for turning to the help of accomplices rather than perpetrating the crime himself (i.e. his motive for entering into the conspiracy), the evidence is clearly admissible under Rule 404(b).

Moreover, this evidence is also admissible to show the background or context of the criminal activity involved. As the court stated in *United States v. Mancari,* 875 F.2d 103, 105 (7th Cir.1989), "[t]he onset of a course of dealings is admissible to enable the jury to grasp the context in which the specific transactions charged as being criminal occurred." The evidence concerning Defendant's incarceration is therefore admissible to show the "big picture" surrounding the conspiracy and charged crime. *Id.* "[E]vidence of prior or contemporaneous uncharged conduct may be admissible to complete the story of a crime by proving the immediate context of events near in time and place." *United States v. Currier,* 821 F.2d 52, 55 (1st Cir.1987). *See also United States v. Holmes,* 822 F.2d 802 (8th Cir.1987); *United States v. Dworken,* 855 F.2d 12 (1st Cir.1988).

Although caselaw on this precise point is thin, it is not totally nonexistent. In *United States v. Champion,* 813 F.2d 1154, 1172–73 (11th Cir.1987), in fact, nearly this precise issue was resolved just as we have resolved it. There, the issue concerned

> the court's decision to allow testimony regarding the fact that Stan Champion was in prison and in a halfway house during a portion of the conspiracy. Evidence indicated that appellant made telephone calls from prison to assure that certain loads had been properly arranged, and that appellant personally assisted in off-loading operations while on furlough from a halfway house.

Moreover, there the objection was also based upon Rules 404(b) and 403; the appellant argued "that the court should have excluded the evidence because the limited probative value of the evidence was sub-

stantially outweighed by the danger of undue prejudice."

Our ruling corresponds with that of the *Champion* court; the evidence is admissible

> because it was linked together in time and circumstances with the conspiracy charged and was necessary to make the crime comprehensible to a jury. If the government had been prevented from presenting evidence as to Stan's incarceration, the jury might have accorded undue weight to the fact that Stan was not physically present at the off-loadings during the period in which he was in jail. As such, the evidence of Stan's incarceration was essential to avoiding jury confusion as to the government's single conspiracy theory.

*Id.* at 1172–73 (citations and quotations omitted).

Similarly, we concur with the result in *United States v. Sutherland*, 463 F.2d 641, 648–49 (5th Cir.), *cert. denied*, 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972). There, evidence had been admitted that the defendant, charged with a bank robbery, had been bailed out of jail just prior to that bank robbery by a co-defendant, and that the defendant had been involved in a "bank robbery seminar" while in jail. The Fifth Circuit ruled the evidence admissible over the defendant's objection that it raised the inference that he had some sort of criminal background.

Like the *Sutherland* and *Champion* courts, we find this evidence necessary to show the background and context of the conspiracy to defraud. Had the jury not been told of the incarceration, it not only would have had to have dealt with a missing piece of the puzzle (Defendant's motive for entering into the conspiracy), but also may well have been unnecessarily confused by troubling gaps in the evidence. No good reason was advanced by Defendant to have required the jury to deliberate with these handicaps, and the Government had the right to show the jury the big picture.

We likewise find that, under the circumstances, the probative value of this information was by no means outweighed by its prejudicial effect. The jury was never informed of Defendant's criminal background. Instead, all it heard was that Defendant had been incarcerated for some unknown reason; moreover, even that information was introduced almost as an aside comment, and could easily have been overlooked. The Government did not focus on the information, or in any way call attention to it. Defendant could have requested a cautionary instruction at the time the evidence was introduced, but he did not. The jury was, however, expressly instructed as to the limited purpose for which the information could be considered; the instruction, *in toto*, reads:

> You have heard evidence that the defendant has been incarcerated. You may consider this evidence only on the questions of motive and opportunity. This evidence is to be considered by you only for these limited purposes.

Under these circumstances, the prejudice to Defendant was very limited, while the probative value of the information was relatively high. Hence, the evidence easily meets the standard of Rule 403, as it does the standard of Rule 404(b). We therefore reaffirm our previous ruling as to the admissibility of this evidence.

*Ergo*, Defendant's post-trial motion is DENIED.