UNITED STATES, Appellee,

v.

Gary K. BURKE, Defendant, Appellant.

No. 91–1169.

United States Court of Appeals,
First Circuit.

Heard Sept. 4, 1991.
Decided Oct. 28, 1991.

Deirdre L. Thurber, for defendant, appellant.

Thomas C. Frongillo, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., and James W. Bailey, Sp. Asst. U.S. Atty., were on brief, for appellee.

Before BREYER, Chief Judge, ALDRICH, Senior Circuit Judge, CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Gary K. Burke, a/k/a Marteen Abdul Jabbar (Burke) was convicted for unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1), in the United States District Court for the District of Massachusetts. On appeal, Burke argues that the district court erred in admitting evidence that placed him at the scene of the crime the day prior to the offense, and in making certain comments about the evidence while instructing the jury. Finding no reversible error, we affirm the conviction.

## I.

On July 17, 1990, a federal grand jury returned a one-count indictment charging Burke with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] The indictment charged Burke, a convicted felon, with possession of a F.I.E. Titan Tiger .38 caliber revolver on July 6, 1988 at Lattimore Court in the Lenox–Camden Housing Development in Roxbury, Massachusetts.

On November 2, 1990, three days prior to the trial, the United States filed a motion *in limine* seeking admission of evidence that Officer Lawrence Welch of the anti-crime unit of the Boston Housing Authority (BHA) had seen Burke at 17 Lattimore Court, the site of the alleged July 6 offense, on July 5, 1988. The motion also stated that the United States sought to offer evidence that when, on July 5, "Investigator Welch confronted Burke, he grabbed a young child as a means to escape," and that Welch decided not to pursue Burke then because Welch did not want to create a "hostage situation." According to the motion, the evidence was relevant and should be admitted because it "establishes Burke's presence at the crime scene at a close time to the crime. Second, the evidence is probative as to Investigator Welch's identification of Burke as the perpetrator." The district court allowed the motion *in limine* over Burke's objection.

## II.

The government's chief witnesses at trial were Officers Lawrence Welch and John Melia, who testified they were working on July 6, 1988 as police officers in the anti-crime unit of the Boston Housing Authori-

---

1. This section provides:
   (g) It shall be unlawful for any person—
   (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

   . . . . .

   to ship or transport in interstate or foreign commerce, or possess in or affecting com-
   merce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

ty (BHA). As members of the BHA Anti-Crime Unit, Welch and Melia were responsible for performing drug investigations, serving warrants and making arrests.

On July 6, 1988, Welch and Melia began their shift by going to various housing developments in Boston. At approximately 6:00 p.m. they went to the Lenox–Camden Housing Development looking for Burke.

Melia parked their unmarked car between buildings 9 and 17 Lattimore Court inside Lenox–Camden. At that point, Welch saw Burke walking in the courtyard about twelve feet away from him. Welch had a clear view of Burke because there were no obstructions between them. Welch yelled, "Gary, police. Don't move." Burke instantly put his hand into his waist or groin area and ran towards Lenox Street along the side of the building. Welch chased Burke while Melia secured the car. As Melia chased Burke along the building, a woman in a second floor window screamed that Burke had a gun.

Welch drew his weapon and continued to chase Burke around the building. Burke continued to run along the other side of the building while Welch yelled, "Police, don't move." Burke kept running. Meanwhile, Melia was between 9 and 17 Lattimore Court. Stepping away from this location, he found himself directly in Burke's path. Melia observed Burke running at full speed pointing a gun at him. Melia dove for the ground, and Burke tripped on his foot or leg. At this time, Welch also clearly saw the gun.

Burke stumbled and continued to run towards Kendall street. Unable to recover his balance, Burke collided with a car parked on Kendall Street, fell and dropped the gun. Burke immediately got up and ran toward Kendall Street. Welch continued to chase Burke along Kendall Street and Sussex Street but was unable to apprehend him. Melia retrieved the gun from under the car. Ballistics examination indi-

cated that the recovered weapon was an operable firearm.

For at least one year after the incident, Melia tried unsuccessfully to locate Burke. Burke was finally arrested two years later.

### III.

### A. *Admission of Evidence of July 5, 1988 Incident.*

■ Burke contends that the district court committed reversible error by admitting into evidence Welch's testimony of an encounter with Burke on the previous day during which Burke grabbed a child, apparently as a shield. Burke says this testimony lacked probative value and evidenced only a wrong revealing bad character, from which the jury might infer "action in conformity therewith," in violation of Fed. R.Evid. 404(b).[2] The government had obtained permission to present this evidence when the court allowed its motion *in limine, supra.* In his opening statement, the prosecutor referred to this episode as follows:

> He [Officer Welch] will tell you that on the day before the incident in this case, on July 5th, 1988, Officer Welch went to the Lenox–Camden Housing Development and saw ... Gary Burke and when he called out to Gary Burke, Gary Burke grabbed a young child and backed into the building which is 17 Lattimore Court, which is within the housing development. Officer Welch did not pursue him, fearful that he may create a hostage situation.

Welch himself did not allude to the child incident on direct examination, saying merely that he had seen Burke the day previous to the crime. However, on cross-examination Welch went into full detail when responding to defense counsel's questions:

> Q. ... [D]id you see him again between that occasion and the occasion that you

2. Fed.R.Evid. 404(b) provides:
   Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It
   948 F.2d—4

   may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

have described that took place on or about July 5th?

A. ... [O]ne time, we were at the Lenox Street Housing Development, looking for him [Burke] with another partner named Michael Lopes. We saw him then, and we were about to have a talk with him, at which time he grabbed some kid, grabbed a child and went inside 17 Lattimore Court.

. . .

Q. And as soon as you presented yourself to Mr. Burke, he immediately ran from you?

A. For the second time. Yes. Both times.

Q. You said on both occasions?

A. Both times. One time, he picked the child up, right. We didn't want no hostage incident, so we let it go like that. We said we'll see him again.

The matter was not mentioned again until the government's closing argument when the prosecutor rendered only an abbreviated version:

You also heard Officer Welch testify the day before the crime on July 5, 1988, that he saw Gary Burke at 17 Lattimore Court in the Lenox–Camden Housing Development. At that time Gary Burke escaped, but he had a clear view of him, and they went back the next day looking for him.

Appellant argues that the court erred in admitting evidence of the July 5 encounter since it both lacked significant probative value and placed before the jury prejudicial "bad act" evidence, *viz.* that Burke grabbed a child as a shield and threatened Welch with a potential "hostage situation." The government replies that this evidence was relevant to show that Burke was in the vicinity shortly before the crime and that Officer Welch, having seen him then, was better able to identify him correctly the next day.

Welch's July 5 sighting of defendant Burke at the site of the alleged crime met the definition of "relevant evidence" in Fed.R.Evid. 401 and was admissible under Rule 402. *See, e.g., Sánchez v. United States,* 341 F.2d 565, 566 (5th Cir.1965) (evidence that detective has seen defendant two months before crime relevant to officer's identification), *cert. denied,* 382 U.S. 860, 86 S.Ct. 119, 15 L.Ed.2d 98 (1965); *McClendon v. United States,* 587 F.2d 384, 386 (8th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1793, 60 L.Ed.2d 244 (1979) (evidence of repeated meetings between defendant and witness was substantially probative because it indicates greater likelihood of accurate identification); *United States v. Shakur,* 562 F.Supp. 864, 866–867 (S.D.N.Y.1983) (contacts between witness and defendant are relevant to determine admissibility of in-court identification). To be sure, Welch's testimony was arguably "bootstrapping," in the sense that Welch was corroborating himself. But the "bootstrapping" factor goes to its weight, not its relevance: Welch's sighting of Burke near the crime scene on the day previous, if believed, made it "more probable" that Burke was the man who committed the alleged crime on July 6. Fed.R.Evid. 401. And the prosecution had justification for wanting to strengthen Officer Welch's identification at the time of the crime, since Burke's primary defense was to attempt to discredit the two officers' identification of himself.

But while Welch's testimony that he saw Burke on July 5 at the site in question was relevant, the further testimony that he grabbed a child as a shield was not. Admission of the latter evidence served no legitimate purpose. By revealing Burke's bad character, it might have tended to encourage the jury to find him guilty upon the supposition that he had criminal propensities. Fed.R.Evid. 404(b), note 2, *supra.*

It is apparently appellant's contention that because of this danger of unfair prejudice from the child episode, *no evidence at all* of the July 5 encounter between Officer Welch and Burke should have been allowed. Fed.R.Evid. 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...."

But admission of the July 5 evidence was not an all or nothing proposition.

The relevant evidence, i.e. that Burke had been present on July 5, could easily have been presented without mention of his conduct with the child. This, in fact, occurred on direct examination of Officer Welch; unfortunately, the prosecutor had already mentioned the irrelevant child grabbing in his opening. Where the relevant evidence is reasonably separable, a trial judge may restrict the prosecutor's presentation to the relevant evidence only, and may curtail the proponent's inquiry into irrelevant and unfairly prejudicial details. See 2 J. Weinstein & M. Berger, *Weinstein's Evidence* 91 404[19] at 404.164.[3] *United States v. Currier*, 821 F.2d 52, 56 (1st Cir.1987) is illustrative of this principle. We held there that a defendant's taped statement about using a gun "for blowing somebody away" was so closely intertwined with the charged offense (possession of a firearm) as to make it essentially inseparable. The statement was, in effect, a recommendation "regarding the use of the gun that the defendant was trying to sell." 821 F.2d at 55. It was "admissible to complete the story of a crime." *Id.* By contrast, the defendant's statement that he had 5,000 valium capsules for sale was both irrelevant to the offense charged and separable; its probative value, if any, was substantially outweighed by its capacity for unfair prejudice, as it made defendant appear to be a large scale distributor of illegal drugs. We held that the court had erred in not redacting the valium reference as requested. 821 F.2d at 56.

The child grabbing evidence here was in no way necessary "to complete the story of a crime" nor inextricably tied into the fact of Burke's presence. The government's stated purpose for introducing evidence of Officer Welch's encounter with Burke on July 5 was solely to confirm Burke's earlier presence at the scene of the crime and Officer Welch's further opportunity to identify him. If that was the point the government wanted to make by introducing that evidence, the remaining testimony concerning the "grabbing of a child" and the fear of creating a "hostage situation" was irrelevant because it did not tend to make Burke's earlier presence at the scene of the crime or Welch's ability to identify Burke "more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. Irrelevant evidence is not admissible. Fed.R.Evid. 402. The incident served no purpose other than to portray Burke as a bad person. Consequently, it was inadmissible under Fed.R.Evid. 403, as its scant probative value was outweighed by the danger of unfair prejudice to Burke.

Having found error in the admission of so much of the evidence as pertained to Burke's grabbing of the child, we next inquire whether the error was harmless.[4] We hold that it was. We have reviewed the entire record, considered the likely impact of the error on the mind of the jurors and have asked whether we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the [jurors'] judgement was not substantially swayed by the error." *United States v. Mazza*, 792 F.2d 1210, 1216–1217 (1st Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1290,

**3.** In balancing probative worth against the risk of prejudice, the district court should "limit the prosecutor's presentation to such facts of the prior offense as are reasonably necessary to prove the point for which the evidence is admitted, and to exclude unsavory details which go beyond what is necessary to make the point." 2D Louisell & C. Mueller, *Federal Evidence,* § 140 at 209 (1985). As another commentator puts it:

> The judge's ruling on the admissibility of the proffered uncharged misconduct evidence is not an "all or nothing" proposition. The judge has options other than admitting or excluding all the proponent's evidence. The judge may sanitize or tailor the evidence by limiting the amount of detail of the proponent's evidence. In such ruling, the judge admits some of the proffered evidence but excludes the rest. E. Imwinkelried, *Uncharged Misconduct Evidence* § 8:32 at 8–60 (footnotes omitted).

**4.** In describing admission of the child grabbing as "error," we recognize that appellant never specifically asked the court to separate *that* evidence out from the relevant "presence" evidence. Arguably, therefore, we should not describe the court's ruling as error without deciding, first, if it was also *"plain"* error. We need not resolve this question, however, since plain or not, the error was harmless. *Infra.*

94 L.Ed.2d 147 (1987) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). We find it "highly probable" that the erroneously admitted evidence did not contribute to the verdict. *United States v. Benavente Gómez*, 921 F.2d 378, 386 (1st Cir.1990); *United States v. González–Sánchez*, 825 F.2d 572, 580 (1st Cir.1987), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Bosch*, 584 F.2d 1113, 1117 (1st Cir.1978). Burke's bad character was well known to the jury through other, properly admitted, evidence. The parties stipulated that he had been convicted previously of armed robbery, making him a convicted felon. It was brought out that Welch and Melia were seeking to arrest him and that he fled waving a gun. The child grabbing episode, therefore, added little to the portrayal of Burke as a criminal; it was merely cumulative. Nor was it ever clear that the child grabbing was itself an especially reprehensible or vicious event. Few details were supplied and there was no suggestion of serious harm to the child or other effects that might inflame a jury. The prosecutor did not, moreover, embellish upon the incident. He did not mention it at all in his closing. We conclude that, in the circumstances, the prejudicial effect upon the jury was de minimis.

The properly-admitted evidence of guilt was, on the other hand, strong. The charged offense was possession of a firearm by a convicted felon. Both Officers Welch and Melia testified that they saw Burke carrying a firearm on July 6, 1988. The weapon was produced in evidence. There was no contrary evidence of alibi or the like. Hence while it was error to admit the evidence concerning the child, its likely effect upon the jurors appears negligible.

### B. *Comments on the Evidence while Instructing the Jury.*

Burke argues that the district court erred in commenting upon several aspects of the evidence while instructing the jury and that such instructions amounted to a directed guilty verdict. No objection was made at trial to these allegedly improper instructions. Our review, therefore, is solely for plain error. *United States v. Martin*, 694 F.2d 885, 887 (1st Cir.1982). Plain error will be found only to prevent a miscarriage of justice, *United States v. Hunnewell*, 891 F.2d 955, 956 (1st Cir. 1989). Here it is doubtful whether error of any type was committed. In *United States v. Shenker*, 933 F.2d 61, 65 (1st Cir.1991), we held that the trial judge may explain, comment upon, and incorporate the evidence into the instructions in order to assist the jury to understand the evidence in the light of the applicable legal principles. The district court's comments were in that vein, and we discern no serious shortcomings.

*Affirmed.*