**Floyd SCOTT, Plaintiff–Appellant,**

v.

**Ronald A. LAWRENCE; Richard W. Scicluna; Gilbert R. Hudson; and Jean Rupert, Defendants–Appellees.**

No. 92–16078.

United States Court of Appeals, Ninth Circuit.

Submitted April 15, 1994 *.

Decided Sept. 29, 1994.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App. 34(a); Ninth Circuit Rule 34–4.

Floyd Scott, in pro se.

Michael G. Lee, Deputy Atty. Gen., Sacramento, CA, for defendants-appellees.

Before: FLETCHER and TROTT, Circuit Judges, and KING,** District Judge.

Opinion by Judge King; Concurrence by Judge TROTT.

KING, District Judge:

California state prisoner Floyd Scott appeals pro se the district court's denial, following a jury trial, of his 42 U.S.C. 1983 civil action against prison officials Ronald A. Lawrence, Jean Rupert, Richard W. Scicluna and Gilbert R. Hudson, alleging cruel and unusual punishment when the officials physically restrained Scott after he attacked one of the defendant officials. Scott contends that: (1) the district court erred in informing the jury on voir dire that Scott had two prior convictions for rape and sexual assault; (2) there was insufficient evidence to support the jury verdict in favor of the prison officials; (3) the district court erred in admitting statements by defendant Lawrence concerning the restriction against Scott's contact visits with his children; and (4) the jury was tainted. We have jurisdiction pursuant to 28 U.S.C. § 1291, and reverse and remand.

## I.

On December 31, 1989, Scott and co-inmate Thomas went to the dining room hall at the New Folsom prison in Sacramento to see appellee Lawrence. Lawrence supervised inmates, including Scott and Thomas, in the dining room hall kitchen.

It was Scott's day off, but he and Thomas went to the dining room to get information from Lawrence regarding the amount of money in his inmate trust account. In the past, Lawrence had gotten such information for Scott as a favor. Thomas first asked Lawrence about his trust account balance following his having worked during the month of December. While Thomas asked Lawrence about his trust account balance, Scott, who had been hiding behind the door, jumped out and said "Boo, guess who's here." Lawrence, surprised, told both Thomas and Scott that he could not help them because

** Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

the trust office was closed, and that he would get the information for them during the next week. Lawrence then told Thomas and Scott that they were out of bounds, and that they had to leave. Neither inmate heeded Lawrence's order to leave, and both continued to ask about their accounts.

After giving the inmates six unheeded orders to leave, Lawrence told them that he was going to escort them out of the area. Thomas started to leave, but Scott did not. Scott was facing Lawrence and he had begun to speak very loudly and was very agitated. Lawrence then heard a noise in the kitchen, and as he turned his head to see what the matter was, Scott hit him on the side of the head. Lawrence was stunned but managed to grab Scott. Officer Rupert responded to help and grabbed Scott. Both officers attempted to get Scott to the ground so he could be handcuffed.

Officer Scicluna then came to assist, and used a leg trip to get Scott to the ground. Scott, Lawrence and Rupert fell in a heap. The three officers wrestled with Scott, trying to get his hands in a position for handcuffing. An alarm then sounded and Officer Hudson responded to help. Hudson grabbed Scott's hands to get them in position for handcuffing. As he did, Scott bit him on the hand. Hudson then punched Scott in the face twice. Scott then ceased struggling and was placed in handcuffs.

On January 30, 1989, Scott filed his complaint in the U.S. District Court for the Eastern District of California, alleging violations of 42 U.S.C. § 1983. Defendant's motion for summary judgment was denied on November 7, 1990. Both parties consented to have the matter tried by Magistrate Judge John F. Moulds. The case came on for jury trial on May 21, 1992, and the jury returned a defense verdict on May 22, 1992. This appeal followed.

## II.

Scott first argues that he was prejudiced by the court's revelation of his two prior rape and sexual assault convictions before the jury on voir dire. We agree.

On May 21, 1992, prior to trial, defense counsel advised the court in chambers that it would seek to introduce appellant's prior convictions into evidence for purposes of impeachment.[1] Neither Scott nor defense counsel sought any proposed voir dire questions regarding the prior convictions or the nature of the offenses leading to the convictions. The court itself subsequently placed the convictions before the venire panel during voir dire:

> THE COURT: Then also you were a peace officer during part of the time you were with the DMV?
>
> PROSPECTIVE JUROR LUNDGREN: Yes, sir, that is correct.
>
> THE COURT: Is there anything about that service that would bias you, either for or against the plaintiff Mr. Scott in this case?
>
> PROSPECTIVE JUROR LUNDGREN: I don't know, sir, I don't know if you heard that right. I started to say I don't know; and I said no, sir. The answer is no, sir.
>
> THE COURT: I thought you said I don't know. You will hear in the course of this trial that Mr. Scott has been convicted on two separate occasions of felonies: one involving a charge of sexual battery and the other involving charges surrounding a rape charge.
>
> You will be instructed that you may consider those convictions as one element in weighing the credibility of witnesses.
>
> Is there anything about those convictions that would cause you, however, to automatically disregard his testimony?
>
> PROSPECTIVE JUROR LUNDGREN: No.

Reporter's Transcript on Appeal, May 21, 1992, p. 41, line 2—p. 42, line 8.

The evidence of the prior convictions was never introduced in any other form during the trial. Because Scott did not receive a copy of the deposition transcript where he

---

1. The defense planned to introduce at trial a deposition transcript in which Scott allegedly had denied any knowledge of prior convictions.

allegedly denied knowledge of the two prior convictions, the court refused to allow the deposition to be read into evidence.[2]

### III.

■■■■ A trial court's conduct during civil voir dire is reviewed for abuse of discretion. *Darbin v. Nourse,* 664 F.2d 1109, 1114 n. 7 (9th Cir.1981). Voir dire must be probing enough to reveal jurors' prejudices regarding issues that may arise at trial, so that counsel may exercise their challenges in an informed manner. *Id.* at 1113. The principal purpose of voir dire is to probe each prospective juror's state of mind to enable the trial judge to determine actual bias and to allow counsel to assess suspected bias or prejudice. *Id.* A trial judge has a "serious duty" to determine the question of actual bias. *Dennis v. United States,* 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950).

No appellate authority to date specifically holds that it is an abuse of discretion for the judge in a civil trial to put a plaintiff's prior rape and sexual assault convictions before the jury on voir dire. Existing authority primarily addresses the propriety of a trial court's failure to inquire into prior convictions so as to explore potential prejudice. *See, e.g., United States v. Mayo,* 646 F.2d 369, 373–74 (9th Cir.) (Trial court did not abuse its discretion in failing to question the jurors individually where defendant's counsel called the court's attention to local newspaper articles which mentioned that the defendant had twice previously been convicted of federal crimes), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981); *United States v. Batchelder,* 581 F.2d 626 (7th Cir. 1978) (Trial court's use of a series of questions following reference to a defendant's conviction cannot be termed an abuse of discretion); *rev'd on other grounds,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

■■■■ The situation in the present case, however, is very different, and much more prejudicial to appellant. Here the trial court *sua sponte* revealed prejudicial information about appellant to the venire panel. First,

we hardly need state that rape and sexual assault convictions are among the most prejudicial types of information the jury could learn about the plaintiff in a civil suit. Second, despite the prejudice inherent in such convictions the trial court informed the jury of them without being required to do so. Specifically, the convictions could have been admitted at trial solely for purposes of impeachment, and even then only if the court found that their probative value outweighed the prejudice. *See* Fed.R.Evid. 609(a). While the balancing test of Rule 609 might have permitted the court to admit the bare fact of appellant's convictions, the additional step of informing the jury of the specific charges involved was clearly more prejudicial than probative. Thus, the court told the jury more than necessary, thereby prejudicing appellant. *See Chivars v. Borg,* No. C–91–4350–CAL, 1994 WL 28016, and *3, 1994 U.S.Dist. Lexis 835, and *7–*9 (discussing *People v. Valentine,* 42 Cal.3d 170, 228 Cal. Rptr. 25, 720 P.2d 913 (1986), under which if the defendant in a criminal case stipulates to the existence of prior felony convictions where it is a required element of the charged crime, "the nature of his prior felony should not be disclosed to the jury").

We note, moreover, that the trial court informed the jury of appellant's rape and sexual assault convictions without knowing whether they would ever actually be introduced in the case—and as it turned out, they never were. The possibility that the convictions might have been introduced in a collateral manner at some later stage, and then only after their prejudicial value had been balanced against the probative, was simply not weighty enough to justify "the risk of tainting the trial irreparably." *United States v. Collatos,* 798 F.2d 18, 21 (1st Cir.1986).

We are left with the firm conviction that the trial court committed a clear error of judgment. *See United States v. Plainbull,* 957 F.2d 724, 725 (9th Cir.1992). We therefore conclude that its statements to the venire panel concerning Scott's prior rape and sexual assault convictions was an abuse of discretion.

---

**2.** The court did, however, instruct the jury regarding the jury's proper consideration of the convictions. Scott does not challenge the propriety of the instruction.

Because we reverse and remand on the voir dire issue, we need not reach Scott's remaining arguments. The judgment of the trial court is REVERSED and REMANDED for further proceedings consistent with this opinion.

TROTT, Circuit Judge, concurring in the result.

I do not disagree with my colleagues that the judgment in this case must be reversed and remanded for further proceedings, but I respectfully disagree with their analysis.

I see nothing wrong with what the trial judge did during voir dire with respect to Scott's priors, which (as far as I can tell from the record) were expected by both sides to go before the jury on the issue of Scott's credibility. What the judge did and said was designed at the time to protect Scott from any collateral prejudice that might flow from the limited use of the priors. This, of course, is why *neither side* objected at anytime to the judge's voir dire. It is most remarkable that the majority labels as an abuse of discretion an action manifestly taken to protect a litigant's right to a fair trial, especially when both parties appear to have believed at the time the action was taken that what the judge was doing was perfectly proper. The problem in this case stems from a subsequent and unexpected ruling eliminating the use of Scott's priors, a ruling the judge could not have foreseen.

Thus, it is because the damaging priors never materialized as evidence that Scott is entitled to a new trial, not because the trial judge abused his discretion during voir dire. Calling something an abuse of discretion in this case imposes on the trial judge a duty of foresight or premonition beyond the ability of even a federal judge.