**Joseph MUNCY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 41A04–9902–CR–54.**

Court of Appeals of Indiana.

Sept. 27, 1999.

Rehearing Denied Nov. 9, 1999.

ny by a police officer that Casey Wooldridge, an admitted participant in the robbery and burglary, identified Muncy as his confederate in the crime upon being shown a photograph of Muncy.

## FACTS

In January of 1992, Mike Smiley drove Casey Wooldridge and a third man to the Hilltop Motel in Edinburgh with the intention of robbing it; however, they did not do so that night. Subsequently, at 10:30 p.m. on January 28, 1992, Smiley again drove Wooldridge and the third man to the Hilltop Motel and dropped them off. Inside, owners Mike and Brenda Ford lay asleep in their bedroom in the living quarters behind the motel office. Brenda heard "wake up this is a robbery" and began to scream, waking Mike. (R. 300). They saw two armed men: Wooldridge, wearing a bandanna around his face and a knit cap pulled over his forehead, and the third man, who was "bigger," "wider," and wore a ski mask. (R. 300). The men tied the couple's arms and legs behind their backs, placed duct tape over their mouths, and covered their heads with pillows. The men threatened to kill the Fords and demanded to know "where the money was." (R. 276). Mike told them there was a safe in the closet and provided the combination. As the Fords heard the men rummage through their living quarters, the men took money, some guns, and Mike's watch.

When the Fords could no longer hear the men, Brenda managed to untie herself and then untied Mike. Mike went to the living room to call the police. There, he saw one of the armed men still in the adjoining office. The man told Mike "to hit the floor ... or he'd shoot [him.]" (R. 280). Both men then tied up the Fords again, this time with cords from the Fords' telephones. Smiley picked Wooldridge and the third man up outside the motel. The three went to Wooldridge's grandmother's house, where they split the proceeds three ways.

D. Charles Gantz, Greenwood, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Joseph Muncy appeals his conviction by jury for robbery and burglary, both class B felonies.

We reverse and remand.

### ISSUE

Whether the trial court committed reversible error when it admitted testimo-

On June 10, 1992, the State charged Muncy with having committed robbery and burglary at the Hilltop Motel. Wooldridge pleaded guilty to two burglaries, one of which was the Hilltop Motel crime, in September of 1992. Smiley was tried and convicted by a jury for conspiracy to commit burglary of the Hilltop Motel, at which trial Wooldridge testified against him. After fifteen continuances at Muncy's request, his trial commenced in August of 1998. Muncy presented the defense of alibi. At trial, both Fords described their ordeal on the night of the robbery but neither could identify Muncy as one of the men who had broken into the motel and robbed them.

Wooldridge, who had already served his sentence for the motel robbery, was called as a witness by the State. Wooldridge testified that he could remember virtually nothing about the third man and his participation in the robbery more than six years ago. Wooldridge said he "didn't know" the name of the person who robbed the motel with him, (R. 382), did not know "a person with the nickname of Bo," (R. 385), had never met the person who went with him into the motel that night, and could not describe that person. Wooldridge also denied having ever met Muncy before the date of the robbery. Further, Wooldridge said Muncy did not "look familiar" and did not "look like" his confederate at the motel. (R. 408). However, Wooldridge did acknowledge giving the following testimony cited to him by the State from Smiley's trial:

"We asked them where the money was because there wasn't any in the safe and he said it was all in the bank. There was a desk sitting in there and Bo started going through the desk and there was some money, some change and stuff in the desk. So he asked me to get a pillow case from, from off one of the pillows. I did and I give it to him and he started putting the money into the pillow case. And before that when we was in the closet there were some shot-

guns in there and we had sat them out to take with us:" (R. 396).

"Bo, I guess, he threatened to do something to his wife, he asked him where the money was and if he didn't tell him that his wife was looking kind of good and he was looking up her shirt and stuff." (R. 397).

Moreover, at trial he also testified that at the time the three men were dividing the proceeds from the motel, he knew "that third person's name was Bo," (R. 399); however, Wooldridge never identified Muncy in court as the person named Bo.

When Smiley testified, he confirmed that he had completed the executed portion of his sentence and was then serving probation for the balance of his sentence. Smiley testified in detail about Wooldridge's participation in the robbery but generally disclaimed any current ability to remember much of anything about the third man involved in the robbery. However, he acknowledged having known Muncy since before 1992, identified Muncy in court, and stated that he also knew Muncy as "Bo, Bo Muncy." (R. 418). Smiley admitted driving the car to the Hilltop Motel on that night in January 1992 and having "knowledge that it was going to occur before it occurred and I picked up the people that robbed it," one of whom was Wooldridge. (R. 420). When asked whether the other person was Muncy, Smiley answered, "I believe so." *Id.* Further, Smiley remembered that in an interview shortly before trial with the prosecutor and Muncy's counsel, he had said "that it was [Wooldridge] and Bo that went into that hotel," and "that [he] dropped [Wooldridge] and Bo and drove away and came back and picked up [Wooldridge] and Bo." (R. 421, 421–22).

Lieutenant Cox of the Johnson County Sheriff's Department testified that after the robbery he prepared a composite of the masked robbers, based upon the Fords' descriptions. The composites indicated the man with the bandanna, Wooldridge, was slender; the man in the ski

mask, "stocky." (R. 342). He further testified that shortly before the charges were filed against Muncy, he was present when Wooldridge gave a statement admitting his participation in the Hilltop robbery. After the statement, Cox and another officer drove Wooldridge to Edinburgh, where Wooldridge pointed out a house where the third man lived. Lieutenant Cox determined that Muncy lived at the house. After Wooldridge had testified, the State recalled Cox to the witness stand over Muncy's objections on hearsay and unduly suggestive identification procedure grounds. Cox then was allowed to testify that he had shown Wooldridge a photograph of Muncy, and Wooldridge "stated that that was in fact the person that was with him in the Hilltop Motel robbery." (R. 481).

The jury convicted Muncy of both the robbery and burglary charges.

### DECISION

Muncy claims that the trial court erroneously admitted Lieutenant Cox's testimony about how Wooldridge, upon viewing the photograph of Muncy, identified Muncy as his confederate at the motel because (1) that testimony was inadmissible hearsay, and (2) the pretrial single-photo identification procedure was impermissibly suggestive.

■ Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is not admissible unless there is an exception providing therefor. Ind. Evidence Rule 802. Error in the admission of evidence constitutes reversible error if admitting the evidence affected a substantial right of the party. *Wrinkles v. State*, 690 N.E.2d 1156, 1158 (Ind.1997), *cert. denied* —— U.S. ——, 119 S.Ct. 148, 142 L.Ed.2d 121 (1998); *see also* Ind. Trial Rule 61; Ind. Evidence Rule 103.

■ The trial court admitted testimony by Lieutenant Cox about Wooldridge having identified Muncy as his confederate as identification evidence under Indiana Rule of Evidence 801(d)(1)(C). The Rule provides that a statement is "not hearsay" if "[t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, *and* the statement is . . . one of identification of a person shortly after perceiving the person. . . ." *Id.* (Emphasis added). As to the first requirement, Wooldridge did testify at the trial. However, as Muncy points out, the State called Wooldridge to testify before it elicited Cox's testimony about his statement and did not ask him about whether he had made a statement to Cox identifying Muncy. Further, when the State presented Cox's testimony about the alleged identification statement, Wooldridge had already been released from his subpoena and left the courthouse. Thus, Wooldridge was not subject to direct examination by the State or "subject to cross examination concerning the statement." Evid. R. 801(d)(1)(C).

■ The State argues that Muncy "had ample opportunity to cross-examine Wooldridge and did so extensively regarding his ability to identify Defendant." State's Brief at 6. Neither the "opportunity to cross-examine" Wooldridge nor the performance of cross-examination "regarding his ability to identify" Muncy satisfies the first requirement of Evid. R. 801(d)(1)(C). Rather, Muncy must have had an opportunity to cross-examine Wooldridge about whether he made a statement to Lieutenant Cox identifying Muncy as his confederate. Muncy bore no burden to cross-examine Wooldridge about a matter that the State had not broached on direct examination; such would contravene the general rule that "cross-examination must be directed toward issues raised upon direct examination." *See Lycan v. State*, 671 N.E.2d 447, 456 (Ind.Ct.App.1996).

Because Muncy did not have an opportunity to cross-examine Wooldridge about

whether he made the statement, we hold that the trial court erred in allowing the admission of Cox's testimony about Wooldridge's alleged identification statement.[1] Accordingly, we next consider whether the erroneous admission of this evidence affected Muncy's substantial rights. *See Bonner v. State*, 650 N.E.2d 1139, 1141 (Ind.1995).

To determine whether the defendant's substantial rights were prejudiced, we must assess the probable impact of the improperly admitted evidence upon the jury. *Id.* A reversal may be compelled if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict. *Id.* (citation omitted). In summary, neither of the Fords could identify Muncy as the third man in the motel robbery. No physical evidence connected Muncy to the robbery. There was no evidence that Wooldridge knew Muncy before the robbery. Only certain carefully excerpted testimony from either Wooldridge or Smiley can support an inference of Muncy's participation based on their testimony. Our review of the record leads us to conclude that Cox's testimony that Wooldridge identified Muncy as his confederate—testimony emphasized by the State in its closing argument—was likely to have had a prejudicial impact on the jurors. Therefore, we conclude that the admission of this evidence affected Muncy's fundamental rights and constitutes reversible error.[2]

We reverse and remand for a new trial. *See Thompson v. State*, 690 N.E.2d 224, 237 (Ind.1997) (retrial not forbidden unless "the evidence is legally insufficient to support the conviction").

KIRSCH, J., and BROOK, J., concur.

1. The requirement for identification evidence under the Rule is conjunctive. Therefore, the fact that the State failed to meet the first requirement is dispositive. Accordingly, we do not reach a consideration of whether identification more than four months after the crime meets the "shortly after perceiving the person" requirement. Evid. R. 801(d)(1)(C).

2. Because we find this first issue dispositive, we do not reach Muncy's contention that the identification procedure whereby Wooldridge was shown but a single photograph was unduly suggestive.